JEWETT v. BRYANT.

1. EVIDENCE—EXPERT TESTIMONY—COMPARISON OF HANDWRITING —COMPETENCY OF WITNESS—STATUTES.

Testimony as to the identity of the maker's signature on a promissory note, based upon witness' knowledge of the writing of the maker obtained as supervisor from statements of assessable property made under 1 Comp. Laws, §§ 3841-3846, is not rendered incompetent by the provisions of the statute, which prohibit the use of such tax statement for any purpose except the assessment of taxes or the enforcement of the provisions of the act.

2. SAME—CROSS-EXAMINATION.

> Prejudicial error is not committed by a trial court, which excludes the testimony of a witness, asked on cross-examination whether he did not tell his attorney in another proceeding that the same maker's signature on another note held by an estate, of which the witness had been executor, was not genuine.

3. HUSBAND AND WIFE—PRINCIPAL AND AGENT—BILLS AND NOTES.

> In the absence of testimony tending to show that a wife was authorized to sign a note in behalf of her husband, or borrow the amount in question, it is error to submit to the jury the question of her agency under the testimony that he had paid other notes so signed by her, to avoid trouble, and in the absence of a showing that he received any benefit from the transaction.

4. SAME—BY ESTOPPEL—RELIANCE ON APPARENT AUTHORITY.

> The payee of a note who does not know that the maker holds out his wife as an agent to execute paper, and who takes the note in reliance on the genuineness of the maker's signature, may not recover on the theory that she relied on the wife's agency to execute the instrument.

5. SAME—AGENCY BY ESTOPPEL.

> One who holds out another as his agent to borrow money is estopped to deny the authority as against another who knows of and relies on the apparent authority.

Error to Lenawee; Lockwood, J., presiding. Submitted November 12, 1909. (Docket No. 146.) Decided December 30, 1909.

Assumpsit by Harriett Jewett, executrix of the last will and testament of Alpha Phelps, deceased, against Wallace Bryant, administrator of the estate of Samuel Bryant, deceased, on a promissory note. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Earl C. Michener* and *Grant Fellows*, for appellant.

*Burton L. Hart* and *Smith, Baldwin & Alexander*, for appellee.

HOOKER, J. Bryant was a farmer; his wife's name

being Helen. The record shows that she approached a Mrs. Phelps for a loan of $600 to send to her adult daughter, who was married and lived in the West. The loan being agreed upon, Helen Bryant offered her own note, which Mrs. Phelps declined to accept unless Mr. Bryant would sign it. Helen went away and afterwards returned with the note in suit, which bore her own and Bryant's names, and the money was paid to her by Mrs. Phelps, who took the note. Bryant's name was claimed to be a forgery, *i. e.*, it was not signed by him, nor was it signed with his knowledge or consent. The execution of the note declared on was denied as permitted by the rule. A verdict was rendered in favor of the plaintiff, and defendant has appealed. It may be stated that the original parties to the action are dead, and the same has been revived in the names of legal representatives. We will, however, use the words "plaintiff" and "defendant" as referring to the original parties. Counsel divide the questions as follows:

(1) Concerning the admissibility of certain testimony.

(2) Whether there were any questions for the jury except the genuineness of the signature.

(3) Was there proof of Helen's agency through estoppel?

The plaintiff claimed that the name was Bryant's genuine signature. One Baldwin testified that he was a supervisor, and that the only opportunity he had had to view signatures was taking statements of different men through the township. He saw them write their signatures. Upon this foundation he was allowed to compare the name on the note with an admittedly genuine signature and express the opinion that they were both made by the same person. The objection made was that "the statute relating to tax statements prohibits their use for the purpose of qualifying him as a hand-writing expert." The statute (1 Comp. Laws, § 3846) is as follows:

"But no such statement shall be used for any other purpose except the making of an assessment for taxes as

herein provided, or for enforcing the provisions of this act."

This court, speaking through Mr. Justice GRANT (having this statute under consideration), said in the case of *Williams* v. *Brown*, 137 Mich. 569, 573 (100 N. W. 786, 787):

"The purpose of the statute evidently is to make these statements privileged except for the use specified in the statute. The language of the statute is emphatic and unambiguous. It prohibits their use for any other purpose than the making of an assessment and enforcing the provisions of the law."

This seems to us a novel application of the statute and decision, and we think that there was no error in holding that a man could testify from knowledge of penmanship thus obtained, so long as his testimony did not refer to any statement or the person who made it.

One Younglove testified that some years before he had seen Bryant write his (the witness') name on a petition, and expressed an opinion that the disputed signature was genuine. He had also been executor of an estate that held a similar note with a disputed signature, and in defendant's lifetime he had brought suit thereon against the defendant, who appeared and denied the execution of the note, and when it came to trial the case was discontinued and witness paid the costs. He claimed that his attorney discontinued the cause without his knowledge, consent, or authority. He was then asked if he did not tell his attorney in that case that in his judgment that note did not bear Bryant's genuine signature. The answer was excluded as a collateral matter. We are of the opinion that the case should not be reversed for this ruling.

Agency. The plaintiff claimed that there was testimony showing that Helen was the authorized agent of her husband with authority to make this note and notes generally; also, that, under the proof, he should be held to be estopped from denying her authority in this instance, and one or both of these questions were submitted to the jury. We are satisfied from our examination of the record that

there is no evidence tending to show that Bryant authorized his wife to borrow this money or gave his note therefor. We are also convinced that there is no testimony warranting a finding that he ever gave her authority to borrow money generally upon his credit or to give his paper for loans. There is testimony that she had done it before, and that he had paid notes so made to avoid trouble and scandal; but there is no testimony that she was authorized to sign his name to notes generally or to borrow money for her own purposes, and there is no evidence indicating that he received this money or any benefit from it. We have gone carefully over the testimony and find nothing from which a legitimate inference can be drawn that Mr. Bryant ever gave his wife general authority to borrow money for her own purposes or to give paper in his name therefor.

Estoppel. Upon the question of estoppel, we understand that one who holds out another as his agent to borrow money is estopped to deny the authority as against one who knows of and relies upon such holding out in making a loan. If there is anything in this record that can be construed as a holding out of his wife, as one authorized to borrow money upon his credit, and to execute and give notes bearing his name, it does not appear that the plaintiff knew and relied upon it in making this loan. On the contrary, she acted upon the belief that she was getting a note bearing Bryant's genuine signature. There was no holding out to her, nor was there any understanding on Mrs. Phelps' part, that she was loaning money to one held out as an agent.

We think the court erred in submitting these questions to the jury, and that the only question to be submitted was that of the genuineness of the signature. The law upon these questions is elementary, and it is unnecessary to cite authorities.

The judgment is reversed, and a new trial ordered.

BLAIR, C. J., and OSTRANDER, MOORE, and BROOKE, JJ., concurred.